Filed 4/10/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SARA HACALA et al., | B316374 |
| Plaintiffs and Appellants, | Los Angeles County |
| v. | Super. Ct. No. 20STCV28230 |
| BIRD RIDES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Reversed in part, affirmed in part.

McGee Lerer & Associates, Rowena J. Dizon and Dean Ogrin for Plaintiffs and Appellants.

Quarles & Brady, Stacy A. Alexejun, Ankineh Zadoorian and Evan Thomsen for Defendants and Respondents.

"At the core of California tort law is a rule born of common law judgments and reaffirmed in statute: 'Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 224 (*Brown*) (conc. opn. of Cuéllar, J.), quoting Civ. Code, § 1714, subd. (a).)[1] "This is the Legislature's 'conclusory expression[ ]' that, as 'legal duties are not discoverable facts of nature,' generally speaking, 'liability should be imposed for damage done.'" (*Brown,* at p. 224 (conc. opn. of Cuéllar, J.).) Thus, our high court has long recognized a general duty of ordinary care is to be presumed and, "in the absence of [a] statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112 (*Rowland*); *Brown,* at p. 218.)

In 2017, Bird Rides, Inc. (Bird) launched its electric motorized scooter rental business in the City of Los Angeles (the City) by deploying hundreds of Bird scooters onto the City's streets and sidewalks.[2] Bird offers the scooters for rent through a smartphone "app" that enables Bird to control, unlock, and rent its scooters to customers who have downloaded the app from

[1]     Statutory references are to the Civil Code, unless otherwise designated.

[2]     We draw the facts from the allegations of the operative second amended complaint, which we assume to be true at the demurrer stage. (*Brown, supra,* 11 Cal.5th at pp. 209–210; *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 395.)

Bird's website. The app also allows Bird to monitor and locate its scooters around the City. This feature is crucial to Bird's business, as the company markets and offers its scooters as a "dock-less" system that allows customers to pick up and leave scooters at any public location without the inconvenience of retrieving or returning the scooters to a designated docking location. Before Bird deployed its dock-less scooters, the City granted the company a permit, under which Bird agreed, among other things, to comply with standards prohibiting scooter parking within 25 feet of a street corner with a single pedestrian ramp, to have staff available 24 hours a day for emergency scooter removals, to remove improperly parked scooters within two hours between 7:00 a.m. and 10:00 p.m. daily, and to educate its agents and customers to follow the City's parking standards.

On November 23, 2019, Sara Hacala and her daughter were walking on a City sidewalk just after twilight. The sidewalk was crowded with holiday shoppers and Hacala did not see the back wheel of a Bird scooter sticking out from behind a trash can. She tripped on the scooter, fell, and sustained serious physical injuries.

Hacala, her husband, and her daughter sued Bird and the City for negligence and other related claims.[3] The trial court sustained defendants' demurrer without leave to amend, concluding neither Bird nor the City owed plaintiffs a duty of care. The court reasoned it was a "third-party user" who

---

[3] Hacala's husband and daughter sued defendants for loss of consortium and negligent infliction of emotional distress, respectively. Hacala asserted a public nuisance claim against Bird based on the same allegations underlying her negligence claim against the company.

had negligently parked the scooter, and defendants had no "special relationship" with any party that required them to protect plaintiffs from the third party's alleged misconduct. Plaintiffs appeal the judgment of dismissal.

We conclude the judgment is correct as to the City, but the trial court erred when it dismissed the claims against Bird. Because plaintiffs' claims against the City are premised on the public entity's *discretionary* authority to enforce the permit, the City is immune from liability under the Government Claims Act (Gov. Code, § 810 et seq.). In contrast, regardless of the permit's terms, Bird may be held liable for breaching its general duty under section 1714 to use "ordinary care or skill in the management of [its] property." (§ 1714, subd. (a).)

As we will explain, having deployed its dock-less scooters onto public streets, Bird's general duty encompasses an obligation, among other things, to use ordinary care to locate and move a Bird scooter when the scooter poses an unreasonable risk of danger to others. Moreover, because it was foreseeable that someone could be injured if Bird breached this duty, and because Bird agreed to take measures to prevent such injuries when it obtained the permit from the City, we cannot find that public policy clearly supports an exception to the fundamental principle that a company like Bird is liable for injuries proximately caused by its want of ordinary care in the management of its property. (See *Rowland, supra,* 69 Cal.2d at pp. 111–112.) Finally, because Bird's alleged conduct constitutes a public nuisance, and because that alleged conduct physically injured Hacala, we conclude Hacala is authorized to assert a private action for public nuisance against the company. We therefore reverse the judgment

4

dismissing the claims against Bird and affirm the judgment in all other respects.

## PROCEDURAL HISTORY

The operative second amended complaint asserts five causes of action for (1) negligence against Bird; (2) public nuisance against Bird; (3) statutory negligence against the City; (4) loss of consortium against defendants by Hacala's husband; and (5) negligent infliction of emotional distress against defendants by Hacala's daughter.

With respect to Bird, the complaint alleges the company "created tripping hazards when [it] deployed dock-less electric motorized scooters in the City of Los Angeles which [it] knew would likely be parked and/or placed on the sidewalk in a manner that obstructed the pedestrian right-of-way, unless [it] educated [its] users and [its] agents on the City of Los Angeles' rules and guidelines on where to park the scooters." Despite this foreseeable risk, the complaint alleges Bird negligently "failed to communicate with and inform and educate its users [and agents] to park scooters only in areas designated by the CITY"; "failed to locate and remove scooters that [were] parked in violation of the requirements set forth by the CITY in its Permit"; and "failed to install 'always-on front and back lights that are visible from a distance of at least 300 feet' on its scooters . . . as required by its Permit." The complaint asserts this conduct was negligent and created a public nuisance.

As for the City, the complaint asserts the City is vicariously liable under the Government Claims Act for its employees' alleged negligent failure to "monitor[ ] BIRD's compliance with the Permit and [to] use[ ] the CITY's powers to impose fees on BIRD." The complaint alleges it was foreseeable that "scooters

5

would likely continue to be parked improperly and in an unsafe manner on the CITY's public sidewalks" unless such actions were taken.

At plaintiffs' request, the trial court took judicial notice of the "2018 City of Los Angeles Dockless On Demand Personal Mobility Conditional Permit" (the Permit). The Permit allegedly governs Bird's dock-less scooter operations in the City. Among other things, the Permit requires:

- Bird's scooters must "not be parked within 15 [feet] of street corner pedestrian ramps (25 [feet] if there is only a single pedestrian ramp)";
- Bird must "ensure their Vehicles are parked in the landscape/furniture zone of the sidewalk";
- Bird must "ensure their Vehicles are not parked in a way that impedes the regular flow of travel in the public way";
- Bird must "inform Customers on how to properly park a Vehicle";
- Bird must "have smart technology equipment to identify that a vehicle is upright and properly parked, and GPS tracking";
- Bird must "remedy inoperable or improperly parked vehicles within two hours" between "the hours of 7am and 10pm daily";
- Bird must "remove electric scooters from the public right-of-way on a daily basis";
- Bird must "have a staffed operations center in the City and a 24-hour contact person available for emergency removals";

6

- Bird's scooters must "have always-on front and back lights that are visible from a distance of at least 300 feet under normal atmospheric conditions at night," which "must stay illuminated for at least 90 seconds after the Vehicle has stopped";
- Bird must maintain "insurance against claims for injuries to persons or damages to property that may arise" from its operations; and
- Bird must indemnify the City for any violation of law by Bird "or its users, or any bodily injury including death or damage to property arising out of or in connection with any use, misuse, placement or misplacement . . . of [Bird's] device, property or equipment by any person."

Defendants challenged the pleading by demurrer, arguing neither Bird nor the City had "a duty to protect Hacala from the conduct of third parties" absent a "special relationship" with the "unknown user or rider of the scooter" who apparently "abandoned" it in a hazardous location. They maintained the "mere utilization" or permitting "of a dock-less scooter system [was] not sufficient" to establish the requisite special relationship or an actionable charge of "misfeasance," because Hacala had not alleged defendants "instructed or required the scooter . . . to be parked in [a] prohibited area." Because the loss of consortium and negligent infliction of emotional distress claims were both premised on defendants' alleged negligence, defendants argued the absence of a legal duty disposed of those claims as well. Additionally, the City separately urged it was immune from liability under the Government Claims Act.

7

As for the public nuisance claim, Bird argued its conduct could not constitute "a per se public nuisance" because it was "expressly permitted" by the City. Additionally, Bird argued Hacala lacked standing because she could not allege a " 'special injury' " distinct from that allegedly suffered by the general public.

Plaintiffs opposed the demurrer, arguing it mischaracterized the basis for their negligence claims. Notwithstanding the absence of a special relationship, plaintiffs maintained defendants' general duty of due care included the duty to refrain from exposing plaintiffs to an unreasonable risk of injury at the hands of third parties. They argued the Permit's mandates established defendants knew Bird's dock-less scooter operations created an unreasonable risk that third parties would abandon scooters in hazardous locations unless defendants took reasonable measures to ameliorate the foreseeable harm. And, because the Permit represented an " 'operational' " implementation of " 'basic policy decisions,' " plaintiffs argued the City's duty to enforce it was " 'ministerial' " and not subject to the immunities afforded under the Government Claims Act.

The trial court sustained defendants' demurrer without leave to amend, concluding plaintiffs had alleged neither actionable "misfeasance" nor a "special relationship" giving rise to a duty to protect Hacala "against the conduct of third parties." In the court's view, plaintiffs could not allege defendants "created a peril or made [Hacala's] situation worse," because defendants "did not require that the scooter be placed in an area that would cause injuries." Thus, the court reasoned plaintiffs' claims necessarily sounded in "nonfeasance" and the general duty of care codified in section 1714 did not apply. Because the absence

8

of a legal duty was dispositive, the court sustained defendants' demurrer to the negligence, loss of consortium, and negligent infliction of emotional distress claims without reaching the City's immunity defense. The court likewise sustained Bird's demurrer to Hacala's public nuisance claim, concluding Hacala could not allege she was exposed to a harm different from the harm allegedly suffered by the general public.

The court entered judgment dismissing the entire action. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### 1.  *Standard of Review*

We review a judgment of dismissal after an order sustaining a demurrer de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.) In reviewing the sufficiency of a complaint against a general demurrer, "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) We "assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) "We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling." (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549; *Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

When the trial court denies leave to amend, "we also must decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Koszdin v. State Comp. Ins. Fund*

9

(2010) 186 Cal.App.4th 480, 487.) "The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' " (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) The showing can be made for the first time on appeal. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

**2.      *The City Is Immune from Liability for Its Employees' Discretionary Enforcement Decisions***

Under the Government Claims Act, the City, as a public entity, is not liable for injuries arising out of acts or omissions of its employees, except as provided by statute. (Gov. Code, § 815, subd. (a).) Likewise, the City is not liable for injuries resulting from its employee's act or omission where the employee is immune from liability. (*Id.*, subd. (b).) As relevant here, under Government Code section 821, a public employee is immune from liability "for an injury caused by . . . his failure to enforce an enactment." (See also *id.*, § 820.4 ["A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law."].)

Plaintiffs' claims against the City are all premised on the allegation that the City, acting through its employees, "negligently and carelessly increased the risks to public safety because they did not monitor BIRD's compliance with the CITY's rules and parking standards set forth in the Permit that were designed to keep the public safe." That alleged conduct plainly falls within the purview of the immunity afforded the City under the Government Claims Act. Under Government Code

10

section 821, these unidentified public employees are immune from liability for injuries resulting from the employees' alleged failure to enforce the City's rules and parking standards for dock-less scooters.  It therefore follows that the City is likewise immune from liability for plaintiffs' alleged injuries.  (Gov. Code, § 815.2, subd. (b); see also *id.*, § 818.2 ["A public entity is not liable for an injury caused by . . . failing to enforce any law."]; *id.*, § 818.4 ["A public entity is not liable for an injury caused by. . . the failure or refusal to . . . deny, suspend or revoke, any permit . . . ."]; *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1165 [public entity immune from claims based on alleged failure to enforce traffic laws]; *Ellison v. San Buenaventura* (1976) 60 Cal.App.3d 453, 459 [claims for damages resulting from issuance of permits are not actionable].)

Plaintiffs contend the City is not immune under the Government Claims Act because "the duties [the City] was required to perform by its own regulations were ministerial or 'street-level' acts, requiring no discretion."  (See *Nunn v. State of California* (1984) 35 Cal.3d 616, 622 ["The immunity afforded by Government Code sections 818.2 and 821 attaches only to discretionary functions."].)  "A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593.)  Plaintiffs maintain their claims arise from the City's alleged failure to perform ministerial functions because "the Permit prescribed the specific acts available to the City . . . to ensure Bird's compliance with the Permit's rules after the Permit was issued."

11

The Permit's express terms undermine plaintiffs' position. "Whether an enactment creates a mandatory duty is a question of law" that we decide as a matter of " 'statutory interpretation.' " (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499.) To establish a mandatory or ministerial duty, the enactment at issue must be "*obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Id.* at p. 498.) "It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Ibid.*) In determining whether " 'a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function,' " the "enactment's language 'is, of course, a most important guide.' " (*Id.* at p. 499.)

The Permit's terms bear the distinct hallmarks of an enactment granting *discretionary* enforcement authority to a public entity. Under the Permit, "[t]he City *reserves the right* to amend, modify, or change the terms and conditions [of the dock-less scooter pilot program] *at its discretion*." (Italics added.) "At the City's discretion," it is authorized to establish "additional operating zones," including "on-street parking spaces." "The City reserves the right *to determine* where Vehicle parking is prohibited or to create geo-fenced stations within certain areas where Vehicles shall be parked," and "[t]he City reserves the right to determine certain block faces where dockless parking is prohibited." (Italics added.)

Critically, the Permit's plain language directly contradicts plaintiffs' contention that it "specif[ies] ministerial steps [for]

removing the scooters and imposing fees for such removals." On the contrary, while the Permit mandates that "*Operators shall* remove electric scooters from the public right-of-way on a daily basis," it stipulates that "[a]ny Vehicle that is parked in one location for more than 5 consecutive days without moving *may* be removed by the City's Bureau of Sanitation and taken to a City facility for storage at the expense of the Operator." (Italics added.) Consistent with this discretionary language, the Permit provides that "[i]f Vehicle parking standards are not met on a monthly basis, the City *reserves the right* to revoke the Program permit." (Italics added.) Construing these terms "in a reasonable fashion and attributing to [them their] ordinary and proper meaning" (*Posey v. State of California* (1986) 180 Cal.App.3d 836, 850), we conclude the City had the discretion—but was not under a mandatory duty—to remove improperly parked scooters or to revoke Bird's permit for noncompliance. (See *Bonds v. California ex rel. Cal. Highway Patrol* (1982) 138 Cal.App.3d 314, 322 ["A decision to remove or not to remove a stranded vehicle, without more, is thus a discretionary action and comes within the immunity described in Government Code section 820.2."].) The judgment correctly dismissed the City from this action.

3. ***Plaintiffs Have Not Shown They Can Amend the Complaint to State a Claim for Dangerous Condition of Public Property Against the City***

Plaintiffs maintain they can cure their pleading against the City by asserting a new claim for injuries caused by a dangerous condition of public property under Government Code section 835. To state a claim against a public entity under the statute, a plaintiff must plead: "(1) a dangerous condition existed on the public property at the time of the injury; (2) the condition

13

proximately caused the injury; (3) the condition created a reasonably foreseeable risk of the kind of injury sustained; and (4) the public entity had actual or constructive notice of the dangerous condition of the property in sufficient time to have taken measures to protect against it." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439, citing Gov. Code, § 835.) Government Code section 830 defines a "[d]angerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used."

To plead a dangerous condition existed, a complaint's allegations "must establish a *physical* deficiency in the property itself"—that is, the property must be " 'physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself,' or possesses physical characteristics in its design, location, features or relationship to its surroundings that endanger users." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347–1348 (*Cerna*).) While a "public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligent or illegal act," there must be "some physical characteristic of the property [that] exposes its users to increased danger from third party negligence or criminality." (*Id.* at p. 1348.) "[I]t is insufficient to show only harmful third party conduct . . . . ' "[T]hird party conduct by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." ' " (*Ibid.*)

Plaintiffs argue the operative complaint's allegations are sufficient to plead the dangerous condition element of their

14

proposed claim. They emphasize the City authorized the Bureau of Sanitation to remove improperly parked scooters because it allegedly "knew that scooters were being parked improperly . . . on public property," and they contend the City's alleged failure to exercise this authority under the Permit allowed the dangerous condition to persist and injure Hacala.

The foregoing allegations are insufficient to plead a dangerous condition under the governing statutes. What plaintiffs describe is at most "only harmful third party conduct . . . ' "unrelated to the condition of the property." ' " (*Cerna, supra,* 161 Cal.App.4th at p. 1348.) The allegations do not establish the existence of "some *physical characteristic of the property* [that] expose[d] [Hacala] to increased danger from third party negligence." (*Ibid.*, italics added; cf. *Stanford v. City of Ontario* (1972) 6 Cal.3d 870, 882–883 [evidence showing public entity had constructive notice of a "dangerous, unshored, unsloped excavation" on public property sufficient to establish liability under Gov. Code, § 835].)

Plaintiffs contend they can satisfy the "physical defect requirement" by amending the complaint to allege the City "failed to place markings on its sidewalks" to alert the public to "where scooters should be parked." Because members of the public allegedly "would not know where to park [Bird] scooters" unless they "were told where to park," plaintiffs contend the City can be held liable for failing to take protective measures to prevent this foreseeable third-party conduct. We disagree.

A public entity may be liable under Government Code section 835 for failing to take protective measures to safeguard the public from a dangerous condition *of the property itself*; however, when the danger at issue is third-party conduct,

15

liability attaches only if the alleged physical condition of the property "increased or intensified" the risk of misconduct. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1137 (*Zelig*).) Thus, "courts have consistently refused to characterize harmful conduct on the part of a third party as a dangerous condition in the absence of some *concurrent contributing defect in the property itself*." (*Moncur v. City of Los Angeles* (1977) 68 Cal.App.3d 118, 123 (*Moncur*), italics added.) In other words, " 'liability can arise only when third party conduct is coupled with a defective condition of property,' " such that the risk of injury was "increased or intensified by the condition of the property." (*Zelig,* at p. 1137; *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 813 (*Peterson*) [public "can reasonably expect that the premises will be free from physical defects and that [public] school authorities will also exercise reasonable care to keep the campus free from conditions which increase the risk of crime"]; *Gray v. America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 86 ["foreseeable third party conduct combined with some particular feature of the public property may create a dangerous condition of public property"].)

 *Moncur* is instructive. One of the plaintiffs in *Moncur* was severely injured when a bomb that had been placed in a coin-operated locker exploded in a Los Angeles International Airport terminal. (*Moncur, supra,* 68 Cal.App.3d at p. 121.) The plaintiff sought to hold the City liable under Government Code section 835 on the theory that the locker's location outside the security perimeter constituted a dangerous condition that increased the risk a terrorist would hide a bomb and foreseeably harm the public. (*Moncur*, at pp. 121–122, 124.) The *Moncur* court rejected the contention, observing "the airport building was

16

not itself a dangerous or defective piece of public property." (*Id.* at p. 124.) "The danger was created by the act of [a terrorist] placing the bomb on the property," and the locker's location did nothing to increase the "dogged but irrational determination of the perpetrators" of terrorism. (*Ibid.*; see also *Zelig, supra,* 27 Cal.4th at p. 1137 [physical condition of courthouse did not increase or intensify risk that plaintiff would be assaulted; regardless of protective alterations that could have been made, "the risk of injury to [victim] at the hands of her ex-husband was at least as great outside the courthouse"].)

Like the locker and airport terminal in *Moncur*, the City's sidewalks are not defective or dangerous pieces of public property simply because third parties may improperly use them in a way that could cause harm to others. As the operative complaint's allegations admit, the dangerous condition at issue is not a physical defect of the property, but the public's alleged lack of knowledge about "where to park [Bird] scooters." The absence of sidewalk markings designating scooter parking zones did nothing to increase or contribute to the risk of harm posed by this alleged lack of knowledge, which, like the threat of terrorism at issue in *Moncur*, allegedly existed regardless of any physical condition of the public property. (See *Moncur, supra,* 68 Cal.App.3d at pp. 123–124.) Absent a physical condition that "increased or intensified" the risk of harm from third-party misconduct, the City cannot be held liable under Government Code section 835 for failing to make protective alterations to the property. (*Zelig, supra,* 27 Cal.4th at p. 1137; cf. *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 711–713 [where physical location and characteristics of "four-lane limited-access highway" led to " 'unusually high' " rate of cross-median accidents, state could be held liable for

failing to install median barrier]; *Peterson, supra,* 36 Cal.3d at pp. 812, 815 [complaint sufficiently alleged dangerous condition where "thick and untrimmed foliage and trees around the parking lot and stairway permitted the assailant to perpetrate his crime"]; but see *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 808 [holding public entity could be liable for failing to erect a barrier between highway and beach to protect beachgoers from foreseeable third-party misconduct]; *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 719–720 [recognizing *Swaner* is limited to "its unique facts" and rejecting public entity liability where proposed protective measures did not address "the physical *condition* of the property," but rather " 'the condition of persons on that property' "].)

4.     ***Bird Owed Plaintiffs the General Duty to Use Ordinary Care in the Management of Its Property***

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' " (*Brown, supra,* 11 Cal.5th at p. 213.)  In reviewing the dismissal of plaintiffs' negligence claims against Bird, the primary question for our determination is whether Bird owed a duty to Hacala arising out of (1) the company's deployment of Bird scooters onto public streets and sidewalks and (2) Bird's entrustment of its scooters to individuals who rented the scooters through the Bird app.[4]

---

[4]     We use the term "negligence claims" to refer collectively to Hacala's negligence claim, her husband's loss of consortium claim, and her daughter's negligent infliction of emotional distress claim against Bird, all of which are premised on the injury Hacala suffered due to Bird's alleged breach of a legal duty

18

The determination of whether a legal duty exists is primarily a question of law. (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 46 (*Weirum*).)

As codified in section 1714, the general rule governing duty in California is that "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." (*Id.,* subd. (a); *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*); *Brown, supra,* 11 Cal.5th at pp. 213–214.) Section 1714 "establishes the *default rule* that each person has a duty 'to exercise, in his or her activities, reasonable care for the safety of others.' " (*Brown,* at p. 214, italics added, quoting *Cabral,* at p. 768.) "While the question whether one owes a duty to another must be decided on a case-by-case basis, *every case* is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct." (*Weirum, supra,* 15 Cal.3d at p. 46, italics added, fn. omitted.) As our Supreme Court has repeatedly emphasized, "in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public

---

of care. (See *LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 285 [" 'A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse.' "]; *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1073 ["bystander liability is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another"].)

19

policy.' "[5] (*Cabral*, at p. 771, citing *Rowland, supra,* 69 Cal.2d at p. 112.)

Notwithstanding the foregoing, Bird contends this rule of general application does not apply to plaintiffs' negligence claims because, in Bird's telling, Hacala did not suffer her alleged injuries as a result of the company's conduct. Instead, Bird maintains Hacala's injuries were caused by the conduct of an unidentified third party who, without any urging from Bird, left a Bird scooter behind a trash can in violation of the City's parking standards. Framed in this way, Bird argues plaintiffs' claims are governed by a different set of rules that applies when a defendant "did not contribute to the risk that the plaintiff would suffer the harm alleged." (*Brown, supra,* 11 Cal.5th at p. 214.) When those conditions obtain, our law recognizes "[a] defendant cannot be held liable in negligence for harms it did not cause unless there are special circumstances—such as a special relationship to the parties—that give the defendant a special obligation to offer protection or assistance." (*Id.* at p. 220.) Because Bird had no control over the third party who left Bird's scooter in a hazardous location, and thus no special relationship with that individual, Bird argues it cannot be charged with a duty to protect Hacala from that third party's conduct. (See *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 621 (*Regents*) [special relationship exists where one party is dependent and "the other has superior control over the means of protection"].)

Bird's characterization of plaintiffs' negligence claims is not consistent with a fair and reasonable reading of the complaint's

---

[5]     We discuss the *Rowland* public policy considerations in the next section of this opinion.

allegations. (See *Blank, supra,* 39 Cal.3d at p. 318.) While the complaint admits that third-party conduct played an essential role in the set of circumstances that resulted in plaintiffs' injuries, the complaint plainly does not concede, as Bird's argument necessarily implies, that third-party conduct was the *sole* cause of the alleged harm. (Cf. *Brown, supra,* 11 Cal.5th at p. 214 [General duty under § 1714 applies to all cases, except when the defendant "*did not contribute* to the risk that the plaintiff would suffer the harm alleged." (Italics added.)].) On the contrary, a fair reading of the complaint confirms it alleges sufficient facts that, if proven, would support a finding that *Bird's* conduct—specifically, Bird's "management of [its] property" (§ 1714, subd. (a))—*contributed* to the risk of harm that resulted in plaintiffs' injuries. (See *Brown,* at p. 215, fn. 7 ["Regardless of whether there is a basis for recognizing an affirmative duty, the no-duty-to-protect rule will not relieve the defendant of an otherwise applicable duty to exercise reasonable care when, by its own conduct, the defendant has increased the risk of harm to the plaintiff."].)

The complaint alleges Bird "controlled, operated, unlocked, and rented each electric motorized scooter through a downloadable app" that allowed Bird "to monitor and locate [its] scooters and to determine if [its] scooters [were] properly parked and out of the pedestrian right-of-way." Notwithstanding these capabilities, Bird allegedly "failed to locate and remove scooters that [were] parked in violation of the requirements set forth [in the] Permit, [including] those parked within 25 feet of a single pedestrian ramp," like the scooter that injured Hacala. The complaint alleges Bird knew that without proper instruction its customers and agents were likely to leave scooters on sidewalks

21

in a manner that posed a tripping hazard to pedestrians. Despite this knowledge and Bird's ability to restrict access to its scooters through the Bird app, Bird entrusted its scooters to these individuals, but allegedly "failed to communicate with . . . and educate [them] to park scooters only in areas designated by the CITY." Finally, the complaint alleges Bird "knew that unless [its] scooter[s] had 'always-on front and back lights' . . . the scooter[s] would not be visible to pedestrians at night." But again, despite this knowledge, Bird allegedly "failed to install 'always-on front and back lights that are visible from a distance of at least 300 feet' on its scooters . . . as required by its Permit."[6]

---

[6] "When a demurrer is sustained, we determine whether *the complaint* states facts sufficient to constitute a cause of action," and "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank, supra,* 39 Cal.3d at p. 318, italics added.) Notwithstanding these "long-settled rules" (*ibid.*), our dissenting colleague focuses instead on "plaintiffs' briefs" to conclude the demurrer was properly sustained, without addressing the factual allegations of the complaint that we have quoted above. (Dis. opn. *post*, at pp. 1–3.) While we acknowledge plaintiffs' appellate briefs will win no awards for clarity, we are obliged to point out that the opening brief succinctly articulates plaintiffs' principal claim of error: "Civil Code section 1714[,] [subdivision] (a) plainly imposes a duty of care on every person in the management of their property. Bird's failure to remove the subject scooter from where it was illegally parked next to the trash can is a breach of that duty. The factual questions posed by the trial court as to how long the scooter had been parked there and whether Bird had sufficient time to remove it, are beyond the court's proper scope in ruling [on] the demurrer." (Footnote omitted.) In any event, consistent with long-settled rules governing our review when a demurrer is sustained, we have focused on the complaint's allegations

Because the foregoing allegations ground plaintiffs' negligence claims upon *Bird's conduct* (and not *solely* the conduct of a third party), this is not a case that requires a special relationship to find Bird had a duty to prevent injuries allegedly occasioned by *Bird's* "want of ordinary care or skill in the management of [its] property"—namely, the Bird scooter that injured Hacala. (§ 1714, subd. (a); see *Weirum, supra,* 15 Cal.3d at p. 48 [rule that "absent a special relationship, an actor is under no duty to control the conduct of third parties . . . has no application if the plaintiff's complaint, as here, is grounded upon an affirmative act of defendant which created an undue risk of harm"]; *Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1163 (*Kesner*) ["Although we have held that the existence of a relationship between the plaintiff and the defendant is one basis for finding liability premised on the conduct of a third party [citations], we have never held that such a relationship is a prerequisite to finding that a defendant had a duty to prevent injuries due to *its own conduct or possessory control*." (Italics added.)].)

We emphasize that our holding today is limited to a legal determination that Bird owed plaintiffs the general duty codified in section 1714 to use ordinary care in the management of its property. While the complaint necessarily makes factual allegations about what specific conduct by Bird allegedly *breached* that duty, our legal determination that Bird owed a duty to plaintiffs under section 1714 must be made "on a more general basis suitable to the formulation of a legal rule." (*Cabral,*

and have no trouble "discern[ing] a cause of action" from them, as discussed above. (Dis. opn. *post*, at p. 1.)

23

*supra,* 51 Cal.4th at p. 773.) We consider plaintiffs' breach allegations only to determine whether Bird's general duty broadly encompasses the category of negligent conduct alleged, but we leave for the trier of fact to determine, based on the evidence, whether any specific conduct constitutes a breach of Bird's duty to exercise ordinary care in the management of its property and whether that breach caused plaintiffs' alleged injuries. (*Id.* at pp. 769, 774.)

*Cabral* is instructive. In that case, a truck driver working for Ralphs Grocery Company (Ralphs) stopped his tractor-trailer rig alongside an interstate highway to have a snack. (*Cabral, supra,* 51 Cal.4th at p. 768.) The plaintiff's husband, driving his pickup truck home from work, veered suddenly off the freeway and collided at high speed with the rear of the stopped trailer, resulting in his death. A jury found both the decedent and the truck driver negligent, awarding damages to the plaintiff based on the trucker's comparative fault, but the Court of Appeal reversed the judgment, holding Ralphs owed no legal duty to avoid a collision between a negligent driver and the company's stopped truck. (*Ibid.*) Our Supreme Court disagreed, concluding the general duty to exercise reasonable care for the safety of others under section 1714 applied to "the operation of a motor vehicle" and thus broadly encompassed the truck driver's conduct "in choosing whether, where and how to stop on the side of the road." (*Cabral,* at pp. 768, 774) In reaching that conclusion, the court clarified that the "legal decision" that a defendant owes a plaintiff a legal duty "is to be made on a more general basis suitable to the formulation of a legal rule," in contrast to "the fact-specific question of whether or not the defendant acted

24

reasonably under the circumstances," which is reserved for the trier of fact.  (*Id.* at p. 773.)  Our high court explained:

> "On the *duty* question that *is* presented here, the factual details of the accident are not of central importance.  That [the truck driver] parked 16 feet from the outermost traffic lane, rather than six feet or 26 feet; that parking for emergencies was permitted in the dirt area he chose; that [the decedent] likely left the highway because he fell asleep or because of some unknown adverse health event, rather than from distraction or even intoxication— none of these are critical to whether [the truck driver] owed [the decedent] a duty of ordinary care.  These facts may have been important to the jury's determinations of negligence, causation and comparative fault, but on duty California law looks to the entire 'category of negligent conduct,' not to particular parties in a narrowly defined set of circumstances.  [Citations.]  To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances."[7]  (*Id.* at p. 774.)

---

[7]     *Coffee v. McDonnell-Douglas Corporation* (1972) 8 Cal.3d 551 (*Coffee*) (see dis. opn. *post*, at pp. 4–5) similarly recognizes, " ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty *is always the same*, to conform

For our present purposes, it does not matter whether the Bird scooter that injured Hacala had been sitting behind a trash can for only a few seconds or several days, because all we recognize at this juncture is that the default duty of care under section 1714 broadly encompasses Bird's obligation to remove or relocate its property when a Bird scooter is in a location where it poses a risk of harm to others.[8] To hold otherwise would be

to the *legal standard of reasonable conduct* in the light of the apparent risk. What the defendant must do, or must not do, is a question of the *standard of conduct required to satisfy the duty*.' " (*Coffee,* at p. 559, fn. 8, italics added.) In other words, while a defendant's duty is always the same, what standard of conduct is required to satisfy that duty—i.e., "what reasonable prudence dictates under those particular circumstances"—is a separate question to be determined by the jury in assessing whether the defendant has *breached* the generally applicable duty. (*Cabral, supra,* 51 Cal.4th at p. 774.)

[8] We emphasize again that plaintiffs' negligence claims are grounded on *Bird's* conduct in managing *its property*. Thus, it is of no consequence that the scooter may have been left in a hazardous location by a Bird agent, customer, or some other third party acting negligently. As our Supreme Court recently reaffirmed, " '[i]f the third party's misconduct is among the risks making the defendant's conduct negligent, then ordinarily plaintiff's harm will be within the defendant's scope of liability' " under section 1714. (*Brown, supra,* 11 Cal.5th at p. 219, fn. 8; accord, *Kesner, supra,* 1 Cal.5th at p. 1149.) The risk that third parties would negligently leave Bird scooters in hazardous locations is plainly among the perils that would make it negligent for Bird to deploy its dock-less scooters on public streets without exercising reasonable care to locate and retrieve abandoned scooters when they pose a danger to the public.

tantamount to declaring Bird bears no legal responsibility to retrieve or remove its property, even under the most egregious set of conceivable circumstances, such as when a scooter lies abandoned for long stretches on a public sidewalk in an especially dangerous and conspicuous location. (See, e.g., *Cabral, supra,* 51 Cal.4th at p. 768.)[9] The critical point is that "[t]he duty of reasonable care is the same under all [conceivable] circumstances; what varies with the specific facts of the case is whether the defendant has breached that duty." (*Id.* at p. 784; accord, *Coffee, supra,* 8 Cal.3d at p. 559, fn. 8.) That question "is generally one to be decided by the jury, not the court." (*Cabral,* at p. 768.) Thus, having determined the duty of ordinary care applies, we leave factual issues—such as how long the particular Bird scooter sat behind a trash can before Hacala tripped over it, whether Bird exercised ordinary care to identify and remove the scooter within that period of time, and the comparative fault of

---

[9] The *Cabral* court similarly observed that were it "to recognize the categorical exemption from the duty of ordinary care Ralphs seeks, no liability could be imposed even when a driver unjustifiably stops his or her vehicle alongside the freeway in particularly dangerous circumstances." (*Cabral, supra,* 51 Cal.4th at p. 768.) Revisiting that observation later in its opinion, our high court asked, "under what circumstances [would Ralphs] have us recognize a duty of ordinary care in stopping alongside a freeway, if not in these." (*Id.* at p. 784.) We might similarly ask, if Bird has no duty to retrieve a Bird scooter that lies abandoned in a dangerous location, then who does? The answer should be obvious. The unresolved questions, which can only be answered by the evidence developed in this case, are whether Bird exercised ordinary care to retrieve its scooter before Hacala tripped over it and, if not, whether doing so would have made any difference. (See *ibid.*)

the actors involved—for the trier of fact's determination to be resolved in light of the specific circumstances proven by the evidence. (See *id.* at p. 769 ["The general duty of ordinary care being applicable, it was for the jury to determine whether the [defendant] *breached* that duty, whether [the plaintiff or a third party] was also negligent, whose negligence caused the [injury], and how to allocate comparative fault between the parties."].)

Similarly, at this point we recognize only that Bird's general duty of care under section 1714 encompasses an obligation not to entrust its scooters to individuals who Bird knows or should know are likely to leave scooters in hazardous locations where they will pose an unreasonable risk of harm to others. (See *Hartford Accident & Indemnity Co. v. Abdullah* (1979) 94 Cal.App.3d 81, 90–92 [general duty under § 1714 encompasses obligation to exercise ordinary care in entrusting one's vehicle to another]; *Ghezavat v. Harris* (2019) 40 Cal.App.5th 555, 559 [negligent entrustment liability " ' "does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate the same, to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner" ' "]; accord, Rest.2d Torts, § 308.) We make no judgment at this stage about whether Bird in fact had reason to know a particular individual was likely to abandon the subject scooter in a dangerous location, whether Bird exercised ordinary care (e.g., through instructions, notices, warnings, or some other means on its app or otherwise) to ensure the individual was competent to park the scooter in a safe location, or whether a failure to exercise such care was in fact a substantial factor in causing plaintiffs' alleged injuries. Issues of this sort, as distinct from the general legal question

of whether a duty exists, are for the trier of fact to determine based on the evidence developed in this case. (See *Cabral, supra,* 51 Cal.4th at pp. 769, 773–774.)

The same is true of our conclusion that Bird's general duty under section 1714 encompasses an obligation to ensure its scooters are sufficiently conspicuous so as not to become unreasonable tripping hazards to pedestrians on public sidewalks. What constitutes ordinary care under the circumstances (e.g., employing always-on lights, reflectors, bright colors, etc.) and whether Bird's alleged failure to exercise such care was a substantial factor in causing plaintiffs' injuries are, again, factual questions that are reserved for the trier of fact's determination based on the evidence.[10]

---

[10] Addressing plaintiffs' specific allegation that the subject scooter did not have always-on lights as required under the Permit, Bird suggests this "would not have made a difference in the subject incident because Hacala alleges that she 'never saw the scooter before tripping over it.' " We of course understand plaintiffs' allegation to be that the absence of always-on lights at night was the reason Hacala " 'never saw the scooter before tripping over it.' " Setting that aside, whether Bird indeed needed to install always-on lights to exercise due care in the management of its property and whether Bird's failure to do so "made a difference" (i.e., was a substantial factor in causing plaintiffs' injury) are factual questions distinct from our legal determination that Bird owed a duty under section 1714 to ensure its scooters were sufficiently conspicuous so as not to become unreasonable tripping hazards for pedestrians on the sidewalks where Bird deployed its scooters.

We emphasize plaintiffs do not pursue, and we do not endorse, a negligence per se claim here—this is not a case where the Permit supplies the necessary standard of care or where a violation of the Permit constitutes per se negligence.

Bird contends it owed no duty to plaintiffs under the circumstances of this case because, in its telling, all that has been alleged is "nonfeasance" related to its failure to take action to remedy or prevent the bad acts of the unidentified third party who left Bird's scooter behind a trash can.  Drawing on the distinction between misfeasance—where the defendant has affirmatively created a peril—and nonfeasance—where the defendant has merely failed to act to protect or rescue the plaintiff from a preexisting peril—Bird contends a defendant can be charged with misfeasance related to third-party misconduct only when " 'the third-party conduct "*was a necessary component of the defendant's conduct at issue.*" ' "  While we have already discussed how Bird's related argument about the absence of a special relationship ignores allegations that Bird's conduct *contributed* to the risk of harm, there are other problems with this misfeasance/nonfeasance contention that warrant consideration.

To begin, our Supreme Court in *Brown* recently expressed disapproval of arguments employing this distinction, explaining, "Although our precedents have sometimes referred to the distinction between 'misfeasance' and 'nonfeasance,' we now understand this terminology to be imprecise and prone to misinterpretation."  (*Brown, supra,* 11 Cal.5th at p. 215, fn. 6; see also *id.* at p. 227, fn. 3 (conc. opn. of Cuéllar, J.) ["our reference today to the confused and confusing '*mis*feasance'/'*non*feasance'

---

(Cf. dis. opn. *post*, at p. 7, fn. 4.)  Rather, the trier of fact must determine "what reasonable prudence dictates under [the] particular circumstances" and whether Bird's conduct satisfied or breached that standard of care.  (*Cabral, supra,* 51 Cal.4th at p. 783; see also *id.* at pp. 769, 773–774.)

distinction is just an acknowledgement of a now outmoded oddity"].)  As our high court clarified, " '[t]he proper question is not whether an actor's failure to exercise reasonable care entails the commission or omission of a specific act.'  [Citation.] Rather, it is 'whether the actor's entire conduct created a risk of harm.' "  (*Id*. at p. 215, fn. 6, quoting Rest.3d Torts, Liability for Physical and Emotional Harm (2012) § 37, com. c, p. 3.) Thus, for example, "a failure to employ an automobile's brakes or a failure to warn about a latent danger in one's product is not a case of nonfeasance . . . , because in these cases the entirety of the actor's conduct (driving an automobile or selling a product) created a risk of harm."  (Rest.3d Torts, *supra*, § 37, com. c, p. 3.) Similarly, here, Bird's entire conduct (deploying dock-less scooters onto public streets) created the risk that those scooters could become hazards for pedestrians and others unless Bird took affirmative measures to prevent this harm.

Extending this logic to circumstances involving third-party conduct, our high court further clarified, " 'If the third party's misconduct is among the risks making the defendant's conduct negligent, then ordinarily plaintiff's harm will be within the defendant's scope of liability.' "  (*Brown, supra,* 11 Cal.5th at p. 219, fn. 8; see also *Kesner, supra,* 1 Cal.5th at p. 1149 ["Where there *is* a logical causal connection between the defendant's negligent conduct and the intervening negligence of a third party . . . , . . . we have found both a duty and liability."].)  As we have already noted (see fn. 7, *ante*), the risk that third parties would negligently leave Bird scooters in hazardous locations is plainly among the perils that would make it negligent for Bird to deploy its dock-less scooters onto public streets without having reasonable measures in place to ensure its customers and agents

31

park them safely or to retrieve abandoned scooters when they pose a danger to the public. (See, e.g., *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 183–184 [defendant's "duty . . . to use due care in the maintenance or operation of that automobile" encompassed decision to leave large commercial truck unguarded and unlocked overnight in high crime industrial area thus increasing risk it could be harmfully misused by a third party]; see *Brown,* at p. 219, fn. 8 [explaining "the focus of the duty inquiry in [*Palma* and similar cases] is not on the defendant's duty to protect the victim from the conduct of a third party, but instead on the defendant's general duty under section 1714 to exercise due care in his or her own conduct"].)

Notwithstanding our Supreme Court's clarifying observations in *Brown*, Bird relies upon a recent decision from our colleagues in Division One to argue it can be charged with actionable "misfeasance" only if "a third party 'parking the scooter next to the trash can, in a prohibited area' is a necessary component" of Bird's conduct. (See *Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 427 (*Uber*).) The argument is unpersuasive.

In *Uber*, the plaintiffs alleged they were abducted and sexually assaulted by assailants who lured the plaintiffs into their vehicles by obtaining decals from the Uber ridesharing provider's website and affixing the decals to their vehicles so as to appear to be authorized Uber drivers. (*Uber, supra,* 79 Cal.App.5th at pp. 416–417.) In an attempt to show "misfeasance by the Uber entities to establish a duty to protect," the plaintiffs argued Uber's "safety-focused marketing and concealment of sexual assaults," coupled with its "deficient matching system" and easily obtainable "Uber decals," created the risk of the

32

assailants posing as authorized drivers. (*Id.* at p. 426.) The appellate court held that although it was foreseeable criminals might use the existence of a ridesharing business model to attack potential victims, the alleged scheme was " 'not "a necessary component" of' the Uber business model" such that Uber could be charged with " 'stimulat[ing] the criminal conduct' " that ultimately harmed the plaintiffs. (*Id.* at p. 427.)[11]

 There are substantive distinctions between this case and *Uber* that compel a different result. The most obvious is, here, plaintiffs were allegedly harmed by *Bird's* failure to exercise due care in the management of *its property*—a risk of harm created

---

[11] The *Uber* court cited *Sakiyama v. AMF Bowling Centers, Inc.* (2003) 110 Cal.App.4th 398 as authority for the rule that a third party's "crime must be a 'necessary component' of the [defendant's] actions in order for the [defendant] to be held liable, absent a special relationship between the parties." (*Uber, supra,* 79 Cal.App.5th at p. 415, quoting *Sakiyama,* at p. 408.) However, the *Sakiyama* court made its observations in the context of assessing the foreseeability component of the *Rowland* analysis— in other words, as part of an assessment of whether an "exception" to the general duty of care should be made for " 'public policy' " reasons. (*Cabral, supra,* 51 Cal.4th at p. 771; see *Sakiyama*, at p. 407 ["Before we discuss the other *Rowland* factors, . . . we must dispose of appellants' . . . contention that satisfaction of the foreseeability element herein equates with a duty of care."].) Because the court "must consult the factors described in *Rowland*" only after *first* determining "there exists . . . an affirmative duty" (*Brown, supra,* 11 Cal.5th at p. 209), we are not convinced that the rule announced in *Sakiyama* is relevant to the first step of the duty inquiry. (Cf. *Uber,* at p. 420 ["The first step in the *Brown* analysis is dispositive in this case."].)

when Bird *affirmatively* deployed its scooters onto public streets —whereas in *Uber*, the plaintiffs were not harmed by Uber's property, but rather by *third parties* exploiting the mere existence of ridesharing services to accomplish their criminal acts. (See *Uber, supra,* 79 Cal.App.5th at pp. 427–429.) Unlike the claim in *Uber*, plaintiffs' negligence claims are not premised on a "duty to protect" plaintiffs from third-party misconduct that Bird " 'stimulate[d].' " (*Id.* at pp. 427–428.) On the contrary, Bird is charged with liability for its own alleged misconduct in deploying its dock-less scooters on public streets, while allegedly failing to exercise ordinary care to ensure Bird scooters do not become an unreasonable hazard to pedestrians and others who use those same public thoroughfares. We need not find third-party misconduct was a necessary component of Bird's business to conclude Bird owed plaintiffs and others a duty to exercise "ordinary care or skill in the management of [its] property." (§ 1714, subd. (a).)

Having concluded the general duty of ordinary care applies, we now consider whether public policy clearly justifies a categorical exception to the default duty of ordinary care for operators of dock-less scooter rental businesses like Bird. (See *Cabral, supra,* 51 Cal.4th at pp. 771–772; *Rowland, supra,* 69 Cal.2d at pp. 112–113.)

5. ***Public Policy Does Not Clearly Support an Exception to the General Duty of Care for Bird's Alleged Conduct***

Having determined the general duty of care set forth in section 1714 applies, we ask next whether a balancing of the public policy factors identified in *Rowland*—most crucially, the foreseeability of harm to the plaintiff, the extent of the burden

34

to the defendant, and the overall policy of preventing future harm—justifies creating an exception immunizing a dock-less scooter rental business like Bird from potential liability for negligently managing its property.  (See *Rowland, supra,* 69 Cal.2d at pp. 112–113; *Cabral, supra,* 51 Cal.4th at p. 781; *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 (*Castaneda*).) In conducting this balancing, we are guided and bound by the directive, reaffirmed time and again by our high court, that "in the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where 'clearly supported by public policy.' " (*Cabral,* at p. 771, citing *Rowland,* at p. 112, *John B. v. Superior Court* (2006) 38 Cal.4th 1177, 1191, and *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)  We conclude an exception is not justified.[12]

---

[12] Our dissenting colleague acknowledges that, "[l]ike the majority, I agree that Bird owes a general duty of care in the management of its property." (Dis. opn. *post*, at p. 4.)  Yet, despite recognizing the general duty of care applies to Bird's conduct, the dissent does not engage in the second step of the prescribed "two-step inquiry" by "consult[ing] the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." (*Brown, supra,* 11 Cal.5th at p. 209; *Rowland, supra*, 69 Cal.2d at p. 112; *Cabral, supra*, 51 Cal.4th at p. 771; accord, *Castaneda, supra*, 41 Cal.4th at p. 1213.)  Accordingly, we have no clear understanding of how the dissent reaches the apparent conclusion that "an exception to the general rule of Civil Code section 1714" is " 'clearly supported by public policy' " for Bird's alleged conduct. (*Cabral,* at p. 771.)  This is especially confounding given, as we discuss below, the apparent policy judgment by state and local officials that companies like Bird, having deployed dock-less scooters onto public streets and

As with all duty questions, "the *Rowland* factors are evaluated at a relatively broad level of factual generality." (*Cabral, supra,* 51 Cal.4th at p. 772.)  Thus, with respect to foreseeability, our Supreme Court has explained the court's task " 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed.' " (*Ibid.*)  Likewise, in applying the other *Rowland* factors, we must ask "not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out *an entire category of cases* from that general duty rule is justified by clear considerations of policy."  (*Cabral*, at p. 772, italics added.) As our high court explained, "[b]y making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a *categorical* no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the court to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the jury to make." (*Ibid.*, italics added.)

We must also be mindful that "[t]he overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible."

---

sidewalks, shall be under a duty to monitor, locate, and remove their property when it poses a risk of harm to the public.

(*Cabral, supra,* 51 Cal.4th at p. 781.)  Thus, the policy question to be answered by balancing the *Rowland* factors is "whether that consideration is outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability." (*Cabral,* at pp. 781–782.)  In conducting the prescribed balancing, "[f]oreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis."  (*Castaneda, supra,* 41 Cal.4th at p. 1213; see *Kesner, supra,* 1 Cal.5th at p. 1145 ["The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care articulated by section 1714 is whether the injury in question was foreseeable."].)

Bird tacitly concedes foreseeability in this case, inviting us to "assum[e] Hacala's injury was foreseeable," but saying nothing more about the consideration.  Foreseeability notwithstanding, Bird argues the "extreme burdens" it would be forced to undertake (were this court to decline to immunize its conduct) clearly support an exception to the general duty of ordinary care for all companies engaged in the dock-less scooter rental business.  (See *Cabral, supra,* 51 Cal.4th at p. 772 [the *Rowland* analysis asks whether "foreseeability and policy considerations justify a categorical no-duty rule" for an "entire category of cases"]; accord, *Regents, supra,* 4 Cal.5th at p. 629.)  Bird also appears to suggest our state and local policymakers have already balanced the overall policy of preventing foreseeable harm against these burdens and, in "permitt[ing] *this exact type of business*," those policymakers determined dock-less scooter companies should be immune from liability for harm caused

37

by their want of ordinary care in the management of dock-less scooters.  Thus, Bird argues that if this court were to hold Bird "owed a duty of care, it would call into question the decisions of the branches of government that directly reflect public policy."

We agree with Bird that a law or regulation enacted by our elected policymakers can be a compelling signpost in determining whether there is any state policy that would clearly justify an exception to the general duty of ordinary care; however, in this case, we find the relevant enactments all counsel strongly *against* recognizing such an exception for dock-less scooter companies in the management of their property.  (See, e.g., *Cabral, supra,* 51 Cal.4th at p. 782 [reviewing state statute that "generally prohibits unnecessarily parking or stopping a vehicle 'upon a freeway' " to determine "whether there is any state policy, such as would clearly justify an exception to the general duty of ordinary care, *promoting or protecting* the activity of parking alongside freeways for nonemergency purposes," and discerning "no such state policy"]; cf. *Lindstrom v. Hertz Corp.* (2000) 81 Cal.App.4th 644, 649, 652 [where statute required rental car agencies to determine only "whether a potential customer possesses a valid driver's license from the jurisdiction where he resides," public policy supported exception to general duty to otherwise ensure licensed British driver was competent to drive on California highways before entrusting him with rental car].)

Bird no doubt concedes foreseeability, at least in part, because the Permit it obtained from the City implicitly recognizes the harm that could foreseeably befall the public from an improperly parked or abandoned dock-less scooter.  Thus, the Permit establishes parking regulations to safeguard against this risk of harm, and directs Bird and other dock-less scooter

companies to "inform Customers on how to properly park a Vehicle."[13]

More to the point, and contrary to the exception that Bird advocates, the Permit plainly reflects a policy judgment by local authorities that Bird and other dock-less scooter companies must take responsibility for the management of their property, regardless of the many imaginable ways a dock-less scooter could end up in a hazardous location. The Permit requires dock-less scooter companies like Bird, among other things, to "ensure their Vehicles are not parked in a way that impedes the regular flow of travel in the public way"; to "have smart technology equipment to identify that a vehicle is upright and properly parked, and GPS tracking"; to "remedy inoperable or improperly parked vehicles within two hours" between "the hours of 7am and 10pm daily"; to "remove electric scooters from the public right-of-way on a daily basis"; and to "have a staffed operations center in the City and a 24-hour contact person available for emergency removals." Far from clearly supporting an exception to the general duty of ordinary care, the Permit reflects a judgment by local policymakers that, if companies like Bird deploy dock-less scooters on the City's streets and sidewalks, those companies will be under a *duty* to monitor, locate, and remove their property whenever it poses a risk of harm to the public or simply "impedes

---

[13] State law appears similarly to recognize the foreseeable harm to the public posed by improperly parked or abandoned motorized scooters. Thus, Vehicle Code section 21235 mandates that a motorized scooter operator "shall not" "[l]eave a motorized scooter lying on its side on any sidewalk, or park a motorized scooter on a sidewalk in any other position, so that there is not an adequate path for pedestrian traffic." (*Id.*, § 21235, subd. (i).)

39

the regular flow of travel in the public way." Critically, these local regulations are expressly authorized by state law. (See Veh. Code, § 21225 ["This article does not prevent a local authority, by ordinance, from regulating the registration of motorized scooters and the parking and operation of motorized scooters on pedestrian or bicycle facilities and local streets and highways, if that regulation is not in conflict with this code."].)[14]

    With respect to the overall policy of preventing future harm and the prevalence of insurance for the risk involved (*Rowland, supra,* 69 Cal.2d at p. 113), we also note the Permit requires a dock-less scooter company like Bird to maintain "insurance

---

[14] Our dissenting colleague appears to insinuate that recognizing Bird's conduct is subject to the general duty to exercise ordinary care in managing its property (or declining to recognize an exception to this duty) is somehow inconsistent with "the Legislature's intent 'to promote the use of alternative low-emission or no-emission transportation' like Bird's scooters." (Dis. opn. *post*, at p. 6, quoting Veh. Code, § 21220.) But, as we have noted (see fn. 12, *ante*), the dissent does not engage with any of the *Rowland* factors in reaching this apparent conclusion, let alone explain how local regulations requiring motorized scooter companies to monitor, locate, and remove their property whenever it poses a risk of harm to the public somehow undermines the Legislature's goal of promoting the use of low-emission or no-emission transportation. Indeed, given the plainly foreseeable risk posed by improperly parked or abandoned motorized scooters (see Veh. Code, § 21235, subd. (i)), it is difficult to see how the dissent could reach this conclusion after consulting the *Rowland* factors. (See *Kesner, supra,* 1 Cal.5th at p. 1145 ["The most important factor to consider in determining whether to create an exception to the general duty to exercise ordinary care articulated by section 1714 is whether the injury in question was foreseeable."].)

against claims for injuries to persons or damages to property that may arise" from its operations and to indemnify the City for any violation of law by the company "or its users, or any bodily injury including death or damage to property arising out of or in connection with any use, misuse, placement or misplacement . . . of [the company's] device, property or equipment by any person." In granting the Permit to Bird, local policymakers apparently made the judgment, consistent with the "overall policy of preventing future harm," that the "costs of [Bird's] negligent conduct" should be borne by Bird, and thus Bird must have insurance to guarantee those costs are compensated. (*Cabral, supra,* 51 Cal.4th at p. 781.) Regulations of this sort plainly do not support a special immunity from the general duty to exercise ordinary care in the management of one's property. (*Rowland*, at p. 112.)

Bird's contention that it will be forced to undertake "extreme burdens" if we decline to immunize its conduct from the general duty of care reflects a material misunderstanding of what section 1714 entails. Bird suggests plaintiffs seek to require that it "constantly monitor every scooter in the city and respond immediately to any illegally or improperly parked scooters so as to prevent any potential tripping hazards." Our dissenting colleague erects a similar strawman when he asserts "the majority [holds] that this duty requires Bird to retrieve scooters that had been improperly parked 'for only a few seconds' or even a few minutes." (Dis. opn. *post*, at p. 6.) That hyperbolic framing is not at all what plaintiffs allege, what we hold, or what section 1714 demands. Rather, the duty we recognize here is simply to use *ordinary care* in monitoring and removing a Bird scooter when it poses an unreasonable risk of harm to others.

41

(See, e.g., *Cabral, supra,* 51 Cal.4th at p. 783 ["the duty at issue is not one of avoiding all nonemergency freeway stops, but the duty to use reasonable care in choosing whether, when and where to stop alongside a freeway"].)  Whether Bird failed to exercise ordinary care—i.e., breached that duty—is, as our Supreme Court repeatedly emphasized in *Cabral*, "to be decided by the jury, not the court," based on "the specific facts of the case." (*Id.* at p. 784; see also *id.* at p. 774 ["To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances."]; see also *id.* at p. 772 [discussing "crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the *court* to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the *jury* to make"].)

Our rejection of the exemption Bird seeks does not mean that every incident of a pedestrian tripping over a Bird scooter can result in negligence liability.  On the contrary, whether the duty of ordinary care has been breached depends on the particular circumstances, including those aggravating or mitigating the risk created, and those justifying Bird's conduct in response.  Nothing that Bird has argued suggests a jury cannot be trusted to weigh these considerations under the particular facts of this case, just as juries do in deciding negligence generally.  (See *Cabral, supra,* 51 Cal.4th at p. 783.)[15]

---

[15]    For this reason, we are not persuaded by the trial court's (or our dissenting colleague's) suggestion that recognizing a duty under section 1714 (or declining to exempt Bird from the general duty of care) is equivalent to imposing strict liability on the

42

**6.** *Hacala Alleges Sufficient Facts to Assert a Private Action for Public Nuisance to Redress Her Personal Injuries*

" 'The public nuisance doctrine is aimed at the protection and redress of *community* interests and, at least in theory, embodies a kind of collective ideal of civil life which the courts have vindicated by equitable remedies since the beginning of the 16th century.' [Citation.]  'To qualify, and thus be enjoinable, the interference [with collective social interests] must be both *substantial* and *unreasonable. . . .* " '. . . It is an obvious truth that each individual in a community must put up with a certain

dock-less scooter industry.  In concluding remarks to its order sustaining Bird's demurrer, the trial court observed that "[a]t least part of plaintiff[s'] claim (perhaps on a 'meta' basis) is that the entire dock-less system of scooter rentals is inherently dangerous and that Bird owes a duty not to engage in this enterprise at all, or at least that if it is going to engage in this business, it must take much stronger affirmative steps to make sure that scooters are not 'parked' inappropriately."  Our dissenting colleague similarly asserts that, from a "commonsense perspective," "the majority suggests that plaintiffs be able to recover for injuries on a strict liability basis rather than to be limited to claims arising from negligence." (Dis. opn. *post*, at p. 6.)  These comments reflect the very error our Supreme Court warned against in *Cabral*.  The duty codified in section 1714 is simply one of *ordinary care*—not strict liability.  At the pleading stage, we have *no evidence* of what affirmative steps Bird has taken, nor are we or the trial court in a position to judge whether Bird must take "much stronger" affirmative steps to satisfy the duty of ordinary care.  "*That* question, as discussed earlier, is generally one to be decided by the jury, not the court." (*Cabral, supra,* 51 Cal.4th at p. 784.)

amount of annoyance, inconvenience and interference and must take a certain amount of risk in order that all may get on together.' " ' " (*Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1547 (*Birke*), quoting *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103, 1105.)

Section 3479 defines a "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."  Section 3480 defines a "public nuisance" as a nuisance "which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Under section 3493, "[a] private person may maintain an action for a public nuisance, if it is specially injurious to himself [or herself], but not otherwise."

In support of Hacala's public nuisance claim against Bird, the operative complaint alleges Bird deployed its dock-less scooters on public sidewalks and, through its negligence, allowed the scooters to be parked and to remain in locations that violated the City's parking standards as set forth in the Permit, thus "creating a nuisance that affects a considerable number of people by creating tripping hazards."  As a "proximate result" of Bird's "statutory violations and maintenance of the nuisance," the complaint alleges Hacala "sustained physical injury" and other personal damages.

Bird contends the foregoing allegations are insufficient to allege either the existence of a public nuisance or Hacala's

44

standing to maintain a private action.[16]  With respect to the existence of a nuisance, Bird maintains its electric scooter operation "cannot constitute a per se public nuisance," because the "operation is expressly permitted in Los Angeles."  The argument has no merit.

The law is settled that " '[a] statutory sanction cannot be pleaded in justification of acts which by the general rules of law constitute a nuisance, unless the acts complained of are authorized by the express terms of the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred, so that it can be fairly stated that the legislature contemplated the doing of the very act which occasions the injury.' "  (*Hassell v. City and County of San Francisco* (1938) 11 Cal.2d 168, 171; *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 291; *Bright v. East Side Mosquito Abatement District* (1959) 168 Cal.App.2d 7, 11.)  The complaint alleges Bird has created a public nuisance by allowing its scooters to remain in locations that *violate* the Permit, thus blocking pedestrian walkways and interfering with the comfortable enjoyment of life of a considerable number of people. (See §§ 3479, 3480.)  The allegation is sufficient to establish the existence of a public nuisance.  (See *Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, 106 (*Phillips*) ["Anything which unlawfully obstructs the free passage or use in the customary manner of a public street is a nuisance," and a "municipality may be held

---

[16]  Bird also contends Hacala's public nuisance claim fails because, like her negligence claim, it requires the existence of a legal duty.  (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542.)  As we have determined Bird owes Hacala a legal duty, we reject this objection to her public nuisance claim.

liable for creating or maintaining a nuisance even though a governmental activity is involved."]; *Bright,* at p. 11 ["While respondent district is authorized by statute to abate mosquitoes, this power cannot be construed so as to permit the district to abate mosquitoes in such a manner as to create a nuisance."].)

Bird also contends Hacala lacks standing to assert a private claim for public nuisance because she has not alleged she "suffered a harm that was different in kind . . . from that suffered by the general public."  The contention ignores that Hacala alleges she suffered *personal injuries* due to conduct by Bird that constitutes a public nuisance.

As noted, section 3493 authorizes a "private person" to maintain an action for a public nuisance, if the alleged nuisance is "specially injurious to [the plaintiff], but not otherwise."  In the usual case, " 'when the wrongful act is of itself a disturbance or obstruction *only* to the exercise of a common and public right,' " our state law has long recognized " 'the sole remedy is by public prosecution,' " because " 'the act of itself does no wrong to individuals distinct from that done to the whole community.' " (*Lind v. City of San Luis Obispo* (1895) 109 Cal. 340, 344, italics added.)  However, " 'when the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance.' " (*Ibid.*)  As our Supreme Court recognized in *Lind*, because an injury " 'to the health and comfort of an individual[ ] is in its nature special and peculiar and does not cause a damage which can properly be said to

46

be common or public, however numerous may be the cases of similar damage arising from the same cause,' " a private person is authorized to seek redress for his or her personal injury under section 3493. (*Lind,* at pp. 344–345.)

Quoting *Venuto v. Owens-Corning Fiberglass Corp.* (1971) 22 Cal.App.3d 116 at page 124, Bird argues Hacala cannot maintain an action under section 3493 unless her " 'damage be different in kind, rather than in degree, from that shared by the general public.' " In *Venuto*, the plaintiffs alleged the defendant used its fiberglass manufacturing plant in a manner that constituted a public nuisance in that it severely polluted the air, thereby "injuring the health of the citizens of the county." (*Venuto*, at p. 121.) Predicating their claim of "special damage upon personal injury," the plaintiffs alleged the air pollution "aggravate[d] their allergies and respiratory disorders." (*Id.* at pp. 124–125.) Inferring from the allegations that "the public is suffering from a general irritation to the respiratory tract and that plaintiffs are suffering a more severe irritation to such tract," the *Venuto* court reasoned "such allegations merely indicate that plaintiffs and the members of the public are suffering from the same kind of ailments but that plaintiffs are suffering from them to a greater degree." (*Id.* at p. 125.) The *Venuto* court thus concluded the plaintiffs could not maintain a private action for public nuisance because their alleged injury was "not different in kind but only in degree from that shared by the general public." (*Ibid.*)

The *Venuto* holding has been criticized, reasonably in our view, for advancing an "incorrect statement of the law" that is inconsistent with our Supreme Court's statements in *Lind*. (*Birke, supra,* 169 Cal.App.4th at pp. 1543, 1550 [holding

aggravation of asthma and chronic allergies from breathing secondhand smoke in apartment complex's outdoor common area sufficient to authorize private action for public nuisance]; accord, Rest.2d Torts, § 821C, com. d, p. 96 ["When the public nuisance causes personal injury to the plaintiff . . . , the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained."].)  Be that as it may, even if we accept that a private action requires an alleged harm that is "different in kind" as opposed to "degree," we are compelled to find the allegations sufficient here.  Fairly construing the complaint, it alleges Bird's conduct has created a public nuisance by obstructing public sidewalks and creating tripping hazards that the general public must avoid.  While that alleged inconvenience is plainly sufficient to establish a public nuisance (see *Phillips, supra,* 27 Cal.2d at p. 106), Hacala allegedly suffered a *different kind* of injury—she tripped on a Bird scooter and was *physically* injured.  We conclude the allegations are sufficient to state a private action for public nuisance to redress this personal injury.

48

## DISPOSITION

The judgment is reversed with respect to all claims against defendant Bird Rides, Inc. and affirmed in all other respects. The parties shall bear their own costs.

**CERTIFIED FOR PUBLICATION**


EGERTON, J.

I concur:


EDMON, P. J.

LAVIN, J., Dissenting:

After two rounds of demurrers, three complaints, and more than 100 pages of appellate briefing, plaintiffs have struggled to articulate what legal duty was owed by Bird Rides, Inc. (Bird) to plaintiffs, and the nature and scope of that duty. That we examine the operative pleading de novo does not mean that plaintiffs need only tender their latest complaint and hope we can discern a cause of action. On appeal, it is their burden to show either that the demurrer was sustained erroneously or that the trial court's denial of leave to amend was an abuse of discretion. And although this matter comes to us after a demurrer, it was pending for more than a year before the trial court sustained the latest demurrer and dismissed the action. Thus, plaintiffs had plenty of time to develop the record to allow them to plead facts supporting a viable legal theory, and to present clear, logical, and convincing arguments supporting their theory. I also note that pleading deficiencies generally do not affect a party's right to conduct discovery (*Budget Finance Plan* v. *Superior Court* (1973) 34 Cal.App.3d 794, 797, 798), and this right (and corresponding obligation to respond) is particularly important to a plaintiff in need of discovery to amend its complaint (*Union Mutual Life Ins. Co.* v. *Superior Court* (1978) 80 Cal.App.3d 1, 12).

Even giving plaintiffs' briefs the most generous reading, they have not, in my view, advanced coherent and consistent legal arguments explaining why the court erred in sustaining the demurrer to plaintiff Sara Hacala's negligence cause of action against Bird.[1] By way of example, according to their opening

---

[1] In their opening brief, plaintiffs assert, without providing any legal authority, that the claims for loss of consortium and negligent

brief, plaintiffs assert "Bird had a duty to take reasonable care to prevent the third party from parking the scooter next to the trash can, and in a prohibited area, which created the tripping hazard for [plaintiff] Hacala." Plaintiffs then argue that, as provided in Bird's permit with the City, the scope of Bird's duty required it to remove the improperly parked scooter within two hours between 7:00 a.m. and 10:00 p.m. Two pages later, however, plaintiffs argue that "how long the scooter had been parked there and whether Bird had sufficient time to remove it, are beyond the court's proper scope in ruling the [*sic*] demurrer" and also suggest that the "failure to remove the subject scooter from where it was illegally parked next to the trash can is a breach of that duty." And although plaintiffs conceded below that the permit issued to Bird by the City of Los Angeles does not create a private right of action, there is no special relationship between plaintiffs and Bird, and that a third party's conduct is "immaterial," plaintiffs now argue that the permit's requirements "demonstrated that tripping hazards from improper scooter parking [were] foreseeable" and the lower court failed to analyze "the special relationship" between Bird, the City and/or Bird's customers based on the permit. Of course, plaintiffs never asked the court to

---

infliction of emotional distress should be "reinstated because the City [of Los Angeles] and Bird owe a duty of care to Mrs. Hacala." And citing *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 542, plaintiffs contend the public nuisance claim "stands or falls with the determination of the negligence" claim. Because the court properly sustained the negligence claim against Bird, I don't address these causes of action. I also don't address plaintiffs' negligence claim against the City because I agree with the majority's conclusion that the City is not liable for plaintiffs' damages.

analyze Bird's purported "special relationship" with the City or its customers. Further, although they expressly used the permit's requirements as a stand-in for the standard of care, on appeal they don't acknowledge that they never alleged, or could have alleged, that Bird failed to remove the illegally parked scooter within two hours as required by that permit. Given the state of plaintiffs' briefing, I could conclude my analysis here based upon plaintiffs' failure to carry their burden on appeal. Nevertheless, I briefly address plaintiffs' contention that the court erred in sustaining Bird's demurrer.

As the trial court aptly noted, "stripped to its essentials, the real complaint is that Bird's business model makes it easy for a user to rent the scooter and just leave it anywhere, even a place where a reasonably careful person could trip over it and get hurt. It is the business model itself, more than it is any particular action or inaction by Bird, that truly caused the injury." The court's view is consistent with plaintiffs' argument in their opposition to the demurrer: "[P]arking in the sidewalks is a necessary component of Bird's scooter business. There is no other place that users can rent them from." The majority appears to agree with plaintiffs that Bird's business model is the problem, concluding "Bird's entire conduct (deploying dock-less scooters onto public streets) created the risk that those scooters could become hazards for pedestrians and others unless Bird took affirmative measures to prevent this harm." The majority also contends that it does not matter whether the Bird scooter that injured Hacala "had been sitting behind a trash can for only a few seconds or several days" because Bird's general duty of care under section Civil Code section 1714 encompasses an obligation to remove or relocate its property, requires it not to entrust

3

scooters to individuals who will illegally park them, and requires Bird to ensure its scooters are "sufficiently conspicuous so as not to become unreasonable tripping hazards to pedestrians on public sidewalks." Based on the undisputed facts pleaded by plaintiffs and those that are judicially noticeable pursuant to their request, as well as plaintiffs' concessions, Bird was not in a special relationship with plaintiffs that would give rise to a duty to protect them from a third party improperly parking or moving one of Bird's scooters. Nor does the pleading or judicially noticeable facts allege actionable misfeasance or establish that Bird's "entire course of conduct of directing dockless scooters to be parked on [City] sidewalks" creates a risk of harm that is actionable. I would therefore affirm the judgment in its entirety.

Like the majority, I agree that Bird owes a general duty of care in the management of its property. As the majority emphasizes, "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." (Civ. Code, § 1714, subd. (a).) But as noted by Witkin, "Generalizations like the foregoing are obviously inadequate and of little practical value. Much of tort law 'is an attempt to define what counts as a legal wrong in particular settings.' " (5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, §1, p. 104.) " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a

question of the standard of conduct required to satisfy the duty." (*Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 559, fn. 8.) To assess the scope of a duty, a court must "identify the specific action or actions the plaintiff claims the defendant had a duty to undertake. 'Only after the scope of the duty under consideration is defined may a court meaningfully undertake the balancing analysis of the risks and burdens present in a given case to determine whether the specific obligations should or should not be imposed[.]' " (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.) Like the existence of a legal duty, the scope of that duty is a question of law for the court. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)[2]

---

[2] The issue before us is not whether we should create an exception based on public policy to the general duty rule enunciated in Civil Code section 1714 under *Rowland v. Christian* (1968) 69 Cal.2d. 108, 112; the issue before us is the standard of conduct required to satisfy that duty. Further, unlike in *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209, where the issue before the Supreme Court concerned how courts should decide whether a defendant has a legal duty to take action to protect a plaintiff from injuries caused by a third party, the majority and plaintiffs contend that Bird's conduct, not that of a third party, is the focus of this lawsuit. Further, in *Brown* the Supreme Court established a two-step inquiry to determine whether a defendant has a legal duty to take action to protect a plaintiff from injuries caused by a third party: "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect. Second, *if so*, the court must consult the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." (*Brown,* at p. 209, italics added; see also *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 627 [special relationship doctrine is an exception to the general rule that there is no duty to protect others from the conduct of third parties].) Here, there is no special relationship between plaintiffs and Bird or

While Bird has a general duty of care in the management of its property, I don't agree with the majority that this duty requires Bird to retrieve scooters that had been improperly parked "for only a few seconds" or even a few minutes. From a commonsense perspective, the majority's view has little to recommend it. Essentially, the majority suggests that plaintiffs be able to recover for injuries on a strict liability basis rather than to be limited to claims arising from negligence. If dock-less bicycle and scooter companies could be held liable for failing to immediately retrieve illegally parked bicycles and scooters, most of them, to avoid liability, would simply go out of business.

Instead, and accepting plaintiffs' argument that they are pursuing the negligence cause of action by relying on the permit as a stand-in for the standard of care (see *Sierra-Bay Fed. Land Bank Assn. v. Superior Court* (1991) 227 Cal.App.3d 318, 333), I would frame the scope of Bird's duty as requiring it to retrieve "inoperable or improperly parked [scooters] within two hours" on a daily basis "[b]etween the hours of 7am and 10pm daily."[3] My view is consistent with the Legislature's intent "to promote the use of alternative low-emission or no-emission transportation" like Bird's scooters. (Veh. Code, § 21220; see also *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 719 [discussing legislative or administrative pronouncements in formulating the

---

some other set of circumstances giving rise to an affirmative duty to protect.

[3] Although Vehicle Code section 21235 prohibits or restricts certain acts by the "operator of a motorized scooter," plaintiffs did not rely on this statute for the standard of care. In any event, the statute's prohibitions and restrictions are limited to the actual scooter user or operator.

standard of care].) Indeed, other public policy considerations justify the requirement of a more specific standard of care in this case. Pursuant to plaintiffs' request for judicial notice, former City Councilmember Joe Buscaino—discussing the City's scooter regulations—explained that "if we're going to address the traffic issue in our city, we need to embrace traffic solutions and live in a multi-modal city" by encouraging the use of zero-emission scooters for "short-trip transportation." Like the trial court, I am "not prepared to state that the dock-less system of scooter rentals is inherently dangerous such that if a scooter is stopped at a dangerous location, Bird is essentially or virtually strictly liable." And here there is no allegation, even on information and belief, that Bird failed to retrieve the improperly parked scooter within two hours after it was parked, abandoned, or moved. Accordingly, there is no basis for concluding that Bird caused or contributed to Hacala's injury.[4]

LAVIN, J.

---

[4] Plaintiffs' additional contention that Bird failed to install or provide working safety lights on the scooter makes no sense. In their complaint, they allege the scooter did not have "always-on" lights visible from at least 300 feet. But the permit only requires the lights to stay illuminated for 90 seconds after the scooter is stopped, and there is no allegation the scooter was in use or had been parked for less than 90 seconds when Hacala tripped and was injured. Plaintiffs also did not argue below that the permit's standard of conduct only defined the minimum standard. Any suggestion to the contrary on appeal is therefore forfeited.